IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-00263-PAB-MEH

JOSEPH GARCIA,

      Plaintiff,

v.

P. A. CHAMJOCK, in his individual and official capacities, and
DR. BUGLEWICZ, in his individual and official capacities,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

      Before the Court is Defendants' Motion for Summary Judgment [filed April 30, 2012; docket #49]. The motion is referred to this Court for recommendation. (Docket #54.) Plaintiff filed a response on July 17, 2012[1]; Defendants have not filed a reply. Oral argument would not materially assist the Court in its adjudication of the motion. For the reasons stated below based on the entire record herein, the Court **RECOMMENDS** Defendants' Motion for Summary Judgment [filed April 30, 2012; docket #49] be **GRANTED**.[2]

---

[1] Upon referral of Defendants' motion from Judge Brimmer, the Court directed Plaintiff to file a response on or before June 30, 2012. (Docket #55.) On June 18, 2012, Plaintiff moved for an extension of time to file his response, but did not indicate a date certain for the requested extension or provide adequate proof of service on Defendants. (Docket #58.) Accordingly, the Court denied with motion without prejudice. (Docket #58.) The Court then instructed Plaintiff to file his response on or before July 14, 2012. (Docket #60.) In accordance with Fed. R. Civ. P. 6(d), the Court accepts his response as filed.

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings

## <u>BACKGROUND</u>

I.   **Findings of Fact**

Upon review of Plaintiff's Amended Complaint [docket #11] and the exhibits submitted by Defendants, the Court presents the following findings of fact. The Court notes that several of the "Facts" Plaintiff asserts are legal conclusions lacking support. Standing alone, such assertions are not sufficient to survive a motion for summary judgment and are, therefore, excluded from the Court's findings. In the interest of clarity, the Court groups the facts according to Plaintiff's claims. Thus, some facts are not presented in chronological order.

1.   Plaintiff is a state prisoner currently incarcerated at Sterling Correctional Facility ("SCF") in Sterling, Colorado.

2.   At all times relevant to the claims asserted in this case, Plaintiff was diabetic. (Dockets ##11 at ¶ 8, 49 at ¶ 2.)

3.   Plaintiff was diagnosed with the hepatitis C virus ("HCV") on April 16, 2009. (Docket #11 at ¶ 44.)

4.   The Colorado Department of Corrections ("CDOC") provides complex treatment for HCV in the form of a 48-week regimen of interferon and ribavirin. (Docket #49-1, ¶ 9.)

---

or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a <u>de</u> <u>novo</u> determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

5.      Inmates seeking treatment for HCV are only eligible to receive such treatment upon completion of six months of drug and alcohol classes.  (*Id.*)

6.      After an inmate has completed the appropriate courses, he or she receives a liver biopsy to determine the degree of liver injury.  Upon review of the biopsy, medical providers determine whether the benefits of the prescribed HCV treatment outweigh the risks.  (Docket #49-1 at ¶ 10.)

7.      An offender will not receive HCV treatment if his or her chronic care issues, including diabetes, are not under control.  (*Id.* at 11.)

8.      Plaintiff completed the required drug and alcohol courses on October 29, 2010.  (*Id.* at ¶29, docket #11 at ¶ 8.)

9.      As of October 29, 2010, medical providers determined that Plaintiff's diabetes was not under control.  (Docket #49-1 at ¶¶ 12-13.)

10.     Plaintiff requested treatment for HCV on February 22, 2010.  However, there is no evidence that Plaintiff requested treatment after he completed the drug and alcohol courses, or that he notified his medical provider of the same.  (*Id.* at ¶ 14.)

11.     On October 17, 2010, Plaintiff was taken to the hospital in the Sterling Ambulance due to internal bleeding and other complications.  (Docket #11 at ¶ 28.)

12.     The following day, Plaintiff learned from Defendant Chamjock that Plaintiff had been placed on a medication known as Naproxen.  (*Id.* at ¶ 27.)

13.     Plaintiff alleges he was not supposed to take this medication because of his HCV. (*Id.*)

14.     A medical report dated October 19, 2010, states that Plaintiff's internal bleeding "was very likely...due to the fact that [Plaintiff] ha[d] been on naproxen and aspirin

3

together in recent times." (Docket #11 at 28.)

15.　　Plaintiff claims he received the Naproxen on August 17, 2010, upon prescription from Defendant Buglewicz. (*Id*. at ¶ 29.)

16.　　Plaintiff contends he should have received Neurontin, but that Dr. Buglewicz prescribed Naproxen "due to formulary budget constraints." (*Id*.)

17.　　Plaintiff has received Actos for his diabetes issues. After taking Actos, Plaintiff claims he has suffered from an irregular heartbeat. (Docket #11 at ¶ 60.)

18.　　Anthony DeCesaro is a Step 3 grievance officer employed by CDOC. (Docket #49-78, ¶ 1.)

19.　　Mr. DeCesaro searched the CDOC grievance database and found no record of Plaintiff filing any Step 3 grievances related to Plaintiff's alleged denial of treatment for HCV, Defendants' alleged failure to provide Plaintiff with adequate medical treatment for diabetes, Defendants' alleged termination of Plaintiff's seizure and neuropathy medications, or Defendants' allegedly improper decision to prescribe Plaintiff with Actos, which caused Plaintiff to experience heart problems. (*Id*. at ¶¶ 8, 11.)

## II.　　Procedural History

Plaintiff initiated this lawsuit *pro se* on February 1, 2011. (Dockets ##1, 4.) At the Court's direction [docket #10], Plaintiff filed an Amended Complaint on June 2, 2011 [docket #11]. Although Plaintiff's Amended Complaint identifies 28 U.S.C. §1331 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Investigation*, 403 U.S. 388 (1971) as the jurisdictional bases for his claim, the Court construes the action against state officials as if it were brought under 28 U.S.C. § 1983. (*See* docket #11, 3.)

4

Plaintiff's Amended Complaint names four defendants: Attorney General Eric Holder, P.A. Gatbel Chamjock, Dr. John Buglewicz, and Dr. Paula[3] Frantz. With the exception of Eric Holder, Plaintiff sues all Defendants in their individual and official capacities. Against the four Defendants, Plaintiff asserts three causes of action. As relief, Plaintiff seeks a declaration that Defendants violated his constitutional rights, $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, and an order requiring SCF to sanitize its restrooms. (*Id.* at 35.)

Upon initial review of the Amended Complaint, Magistrate Judge Boland dismissed Eric Holder as a defendant and dismissed Plaintiff's third claim. (Docket #12.) The remaining Defendants filed a motion to dismiss, which was referred to this Court for recommendation. (Dockets ##23, 44, 38.)

Upon review of Defendants' motion to dismiss and the Court's recommendation pertaining thereto, Judge Brimmer dismissed Plaintiff's claims for monetary damages and declaratory relief against Defendants in their official capacities, dismissed Plaintiff's state law tort claim for outrageous conduct and medical negligence, dismissed Plaintiff's familial association claim, dismissed all claims against Dr. Paula Frantz, and dismissed Plaintiff's claim for injunctive relief. (Docket #43, 14.) In light of his conclusions, Judge Brimmer ordered that the action proceed with respect to Plaintiff's Eighth Amendment claims against Defendants Chamjock and Buglewicz in their individual capacitates only. (*Id.* at 14-15.)

Defendants filed the pending motion for summary judgment on April 30, 2012. They argue that: 1) Plaintiff has provided insufficient evidence in support of his Eighth Amendment claim of deliberate indifference; 2) Defendants are entitled to qualified immunity; 3) any claims that arose more than two years before Plaintiff filed suit are barred by the statute of limitations; and 4) Plaintiff

---

[3]Paula Frantz is named in the Amended Complaint as "Paul" Frantz. (*See* docket #11 at 1.)

failed to exhaust his administrative remedies with respect to nearly all of the claims asserted in his Amended Complaint.

Plaintiff's response, filed July 17, 2012, does not address Defendants' arguments directly. Instead, Plaintiff provides an update with respect to his various medical conditions. Plaintiff observes that his seizures have subsided that his insulin issues are "ok now." (Docket #61 at 3.) Plaintiff is no longer taking Actos, but has started taking Tegertal. (*Id.*) Defendants did not file a reply.

## STANDARDS OF REVIEW

### I.     Construction of Pro Se Pleadings

A federal court must construe a pro se plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). "If the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

### II.    Standard for Summary Judgment

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant

summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Maldonado v. City of Altus*, 433 F.3d 1294, 1302 (10th Cir. 2006).  The non-moving party has the burden of showing there are issues of material fact to be determined.  *Celotex*, 477 U.S. at 322.  If the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial.  *Hysten v. Burlington N. and Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002); Fed. R. Civ. P. 56(e).  These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), *except* the mere pleadings themselves.'"  *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324) (emphasis added).  The Court must view the record and draw "all favorable inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## ANALYSIS

The Court will begin its analysis by determining which, if any, of Plaintiff's claims are barred by the statute of limitations.  Next, the Court will consider whether Plaintiff has exhausted his administrative remedies under the Prison Litigation Reform Act ("PLRA").  The Court will then proceed to analyze whether Defendants are entitled to qualified immunity.  Because the qualified immunity inquiry includes an evaluation of the merits, the Court will address Defendants' first and second arguments together.

I.      **Statute of Limitations**

While Defendants agree that Plaintiff's claims are primarily confined to the treatment he received at SCF, they take issue with Plaintiff's assertion that he has been denied HCV treatment "for six years and counting." (Docket #11 at ¶ 7.) To the extent that Plaintiff seeks recovery for claims arising more than two years ago, Defendants argue that such claims are barred by the statute of limitations.

A.      Statute of Limitations Period

Although Section 1983 does not establish its own statute of limitations, "the statute of limitations for §1983 actions brought in Colorado is two years from the time the cause of action accrued." *Braxton v. Zavaras*, 614 F.3d 1156, 1160 (10th Cir. 2010) (quoting *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006)). Because Section1983 suits assert a federal cause of action, federal law controls when the cause of action accrues. *See Baker v. Board of Regents of the State of Kansas,* 991 F.2d 628, 632 (10th Cir. 1993); *Newcomb v. Ingle,* 827 F.2d 675, 678 (10th Cir. 1987). "In general, under the federal discovery rule, claims accrue and '[t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action.'" *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004) (quoting *Indus. Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994)). "A civil rights action accrues when facts that would support a cause of action are or should be apparent." *Id.* (quoting *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995)).

In *Alexander v. Oklahoma*, the Tenth Circuit drew a distinction between a plaintiff's awareness of his physical injuries and his knowledge of a cause of action. *See id.* at 1215-16. While a plaintiff need not have conclusive evidence of the cause of the injury to trigger the statute of limitations, he must have sufficient facts to put a reasonable person on notice that wrongful conduct

caused the harm. *Id.* at 1216. It is a plaintiff's responsibility to use "reasonable diligence" in seeking to discover those facts. *Id.*

In this case, Plaintiff asserts that he was not diagnosed with HCV until April 16, 2009. (Docket #11 at ¶ 11.) At the same time, Plaintiff also alleges that he has been denied treatment for HCV "for over six years and counting to present 2011." (*Id.* at ¶ 7.) Common sense suggests that Plaintiff was likely unaware of his condition prior to receiving a formal diagnosis; however, a liberal interpretation of Plaintiff's pleadings permits the inference that Plaintiff knew of his HCV as early as 2006. Yet even with this generous assumption, there is no evidence to suggest that Plaintiff was in the custody or care of Defendants during that time or that he made any formal or informal requests for treatment.

In the event Plaintiff was aware of his HCV and unsuccessfully requested treatment from Defendants prior to January 1, 2009, the Court agrees that any claim arising therefrom is barred by two year statute of limitations. Notwithstanding the statute of limitations, the Court also observes that there is no evidence in the record to support a claim against Defendants for any conduct occurring prior to 2009.

B.   Tolling

Mindful that the District Court may reach a different conclusion regarding the accrual of Plaintiff's claims, the Court also considers whether the statute of limitations should be tolled. "In a § 1983 action, state law governs issues regarding the statute of limitations and tolling[.]" *Braxton*, 614 F.3d at 1159. Under Colorado law, the plaintiff bears the burden of demonstrating that tolling is warranted. *Id.* Although "the statute of limitations is not automatically tolled whenever an individual pursues administrative remedies," Colorado law recognizes that equity may require tolling in some instances. *Id.* at 1161. Equitable tolling is, however, "limited to situations in which

either the defendant has wrongfully impeded the plaintiff's ability to bring a claim or truly extraordinary circumstances prevent the plaintiff from filing his or her claim despite diligent efforts." *Id.* (quotations omitted).

Plaintiff's response does not address Defendants' argument regarding the statute of limitations and does not present any circumstances that would justify tolling in this case. Accordingly, to the extent Plaintiff asserts a claim against Defendants for conduct occurring prior to 2009, the Court finds that the claim is barred by the statute of limitations and recommends it be dismissed.

## II.      Exhaustion of Administrative Remedies

Defendants argue they are entitled to summary judgment on the majority of Plaintiff's claims because Plaintiff failed to exhaust his administrative remedies, as required by the PLRA.  Though Plaintiff does not address Defendants' argument directly, he attaches three grievances and a response from CDOC to his Amended Complaint.  (Docket #11 at 30-33.)

Under the PLRA, a prisoner may not sue over prison conditions until he or she has exhausted "such administrative remedies as are available." *See* 42 U.S.C. § 1997e(a); *see also Booth v. Churner*, 532 U.S. 731, 733-34 (2001).  The Supreme Court has determined that "exhaustion is mandatory under the PLRA and []unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).  Although the exhaustion of administrative remedies need not be pleaded in the complaint, a defendant may assert failure to exhaust as an affirmative defense. *Id.* at 216.  The PLRA does not articulate a specific standard for fulfilling the administrative remedy obligation but instead defers to each respective prison to determine whether exhaustion has occurred. *Id.* at 218 ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

Under the Administrative Regulations of the CDOC, an inmate properly exhausts his or her administrative remedies once he or she has filed a Step 3 grievance and has received a written response. (Docket #49-78 at ¶¶ 4-7.) Grievance Officer Anthony DeCesaro represents that the CDOC grievance database contains no Step 3 grievances regarding Plaintiff's alleged denial of treatment for HCV, Defendants' alleged failure to provide Plaintiff with appropriate treatment for diabetes, Defendants' alleged decision to discontinue Plaintiff's seizure and neuropathy medications, or Defendants' alleged decision to prescribe Plaintiff with Actos resulting in heart problems.

Upon review of the grievances attached to Plaintiff's Amended Complaint and in consideration of Mr. DeCesaro's representations, the Court finds that Plaintiff has failed to exhaust his administrative remedies with respect to all but two claims. First, the Court is persuaded, and Defendants do not contest, that Plaintiff's Eighth Amendment claim arising from the Naproxen prescription has been properly exhausted. (Docket #11 at 30-33.) Additionally, the Court finds that Plaintiff has exhausted his administrative remedies with respect to the denial of neuropathy medications prior to December 2010. In particular, the Court observes that Plaintiff filed a Step 3 grievance asking to be placed on Neurontin to ease his nerve damage. (*Id.* at 31.) However, the Court finds no evidence in the record that Plaintiff submitted any Step 3 grievances regarding any of the other allegations that remain pending before this lawsuit, including the alleged discontinuance of Neurontin. Therefore, the Court finds that all other claims are barred by the PLRA and recommends the District Court grant summary judgment in favor of Defendants accordingly.

## III.    Qualified Immunity

Defendants assert an entitlement to qualified immunity with respect to Plaintiff's Eighth Amendment claims. Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions.

*See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an entitlement not to stand trial or face the other burdens of litigation. *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). The privilege is an immunity from suit rather than a mere defense to liability. *Id.* When a defendant asserts the defense of qualified immunity at summary judgment, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)).

In determining whether Defendants are entitled to qualified immunity, the Court will examine first whether the Plaintiff has demonstrated on supported facts that the Defendants violated his constitutional rights. Though the Court finds that all but two of Plaintiff's claims are barred by the PLRA, it will, in the interest of thoroughness, analyze whether each alleged act or deprivation violated the Eighth Amendment. If Plaintiff has established sufficient facts to support a constitutional violation, the Court will proceed to determine whether the right was clearly established at the time of the alleged conduct.

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras,* 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)). Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney,* 509 U.S.

25, 35 (1993); *Estelle,* 429 U.S. at 105.

Plaintiff must meet both the objective and subjective components constituting the test for Eighth Amendment deliberate indifference. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id*. (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006)). The subjective component is met if the plaintiff demonstrates that a defendant "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)).

As the Tenth Circuit established in *Johnson v. Stephan*, 6 F.3d 691, 692 (10th Cir 1993), a difference of opinion between a prisoner and prison medical staff regarding the treatment or diagnosis of a medical condition does not constitute deliberate indifference. In the context of Section 1983 suits under the Eighth Amendment, a defendant is not required to show that he made a correct or even prudent decision in diagnosing or treating a plaintiff's medical condition. *Braxton v. Wyandotte County Sheriff's Dep't*, 205 F. App'x 791, 793 (10th Cir. 2006) ("inadvertent failure to provide adequate medical care or negligence in diagnosing or treating a medical condition does not violate the Eighth Amendment.") "So long as a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met." *Self v. Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006).

With these standards in mind, the Court turns to Plaintiff's specific Eighth Amendment

claims.

A.   <u>Denial of Treatment for HCV</u>

Plaintiff alleges Defendants have violated his Eighth Amendment rights by denying him treatment for HCV.  According to Plaintiff, HCV is a "fatal disease."  Defendants concede that HCV constitutes a sufficiently serious medical condition, but argue that Plaintiff was not eligible for HCV treatment due to his uncontrolled diabetes.

The Tenth Circuit has recognized the authority of medical providers to determine when an inmate should or should not receive a particular course of treatment.  *Taylor v. Ortiz*, 410 F. App'x 76, 79 (10th Cir. 2010).  Like the Plaintiff in this case, the prisoner plaintiff in *Taylor* sought combination antiviral treatment for HCV through the CDOC.  *Id*. at 77.  Due to the *Taylor* plaintiff's advanced age at the time of diagnosis, CDOC officials determined the he was not a good candidate for the combination treatment and, therefore, refused to provide it.  *Id*. The Tenth Circuit held that the prison officials' decision to refuse treatment based on the plaintiff's medical ineligibility did not violate the Eighth Amendment.  *Id*. at 79.

In this case, Defendants argue that Plaintiff was ineligible for HCV treatment on several bases.  First, at the time Plaintiff requested HCV treatment on February 22, 2010, Plaintiff had not completed the required drug and alcohol classes.  (Docket #49-1 at ¶ 14.) Even after Plaintiff fulfilled his academic obligations on October 29, 2010, he remained medically ineligible for HCV treatment due to his controlled diabetes.  (*Id*. at ¶ 12.)  In light of the complexity of the 48-week interferon and ribavirin regime, the CDOC has determined that inmates with uncontrolled diabetes are not good candidates for HCV treatment.  (*Id*. at ¶ 13.)  Accordingly, the CDOC declined to provide HCV treatment to Plaintiff.  Notwithstanding Plaintiff's ineligibility, there is no evidence in the record that Plaintiff requested HCV treatment after February 22, 2010.

Consistent with the Tenth Circuit's determination in *Taylor*, the Court finds that the CDOC's refusal to treat Plaintiff due to his uncontrolled diabetic condition does not violate the Eighth Amendment. Moreover, in the absence of any evidence that Plaintiff sought HCV treatment after he completed the required classes, the Court determines that no reasonable jury could find that Defendants acted with deliberate indifference in denying a course of treatment that was not timely requested.

B.      Naproxen Prescription and Related Complications

As noted above, Plaintiff's Eighth Amendment claim arising from his Naproxen prescription and subsequent ulcer should survive dismissal under the PLRA. Though Defendants concede that Plaintiff's internal bleeding satisfies the objective requirements of the Eighth Amendment, they argue that Plaintiff has not provided sufficient evidence of deliberate indifference to avoid summary judgment on the merits.

Several cases in the Tenth Circuit have address the merits of Eighth Amendment claims arising from allegedly improper prescriptions. *See Randall v. Board of Cnty. Comm'rs*, 184 F. App'x 723 (10th Cir. 2006) (finding that an inmate who suffered from hypoglycemia as a result of a change in his insulin prescription did not state a claim for relief under the Eighth Amendment); *see also Brown v. Prison Health Services*, 159 F. App'x 840 (10th Cir. 2005); *James v. Federal Bureau of Prisons*, 79 F. App'x 417 (10th Cir. 2003). In *Brown*, the Tenth Circuit upheld the dismissal of an Eighth Amendment claim premised on an improper prescription. 159 F. App'x at 840-41. Like the Plaintiff in this case, the prisoner in *Brown* reacted negatively to certain prescription medications. *See id*. Though there were notes in the plaintiff's medical file indicating his allergy to the particular drug he received, the *Brown* court dismissed the plaintiff's claim of deliberate indifference, because the drug was administered under a different brand name than that

listed in the medical file. *Id.* In so doing, the *Brown* court relied on the utter dearth of evidence with respect to the defendant's mental state. *Id.* Judge Lucero dissented to summary dismissal on Rule 12(b)(6) grounds, but observed that prison officials may still be entitled to judgment as a matter of law in the event that the plaintiff failed to come forward with such evidence at the summary judgment phase. *Id.* at 841-42.

Published decisions from other circuits also emphasize the significance of a defendant's mental state in prescribing drugs to which inmates react adversely. In *Benson v. Cady*, 761 F.2d 1985 (7th Cir. 1985), the Seventh Circuit found that an inmate who received a psychiatric drug rather than a muscle relaxant had not alleged a constitutional violation. The *Benson* court acknowledged that a plaintiff may state a claim under the Eighth Amendment where the medical provider knew of and disregarded an inmate's allergy, but found that the particular plaintiff had failed to allege that the defendant physician "intentionally prescribed the incorrect medication or that he did so with the knowledge that it would harm [the plaintiff]." *Id.* at 34.

In addition to demonstrating that a defendant acted with deliberate indifference in prescribing a problematic medication, the Tenth Circuit has also underscored the importance of causation. *See Daniels v. Gilbreath*, 668 F.2d 477, 488-89 (10th Cir. 1982). In *Daniels*, the Court reversed a jury verdict entered in favor of a father whose son died suddenly after a physician at a county jail injected him with a particular tranquilizer. *Id.* at 483-84. Despite evidence that the physician ignored warnings of the son's allergy to the tranquilizer, the *Daniels* Court held that the facts did not support the jury's finding of a Eighth Amendment violation. *Id.* at 487. In so holding, the Court emphasized that "[t]he causal element must, in a medical case like this, be proven by positive evidence." *Id.* at 488. Because the physicians who testified at trial were unable to provide an opinion on the cause of death, this "essential element" was not satisfied. *Id.* at 488-89.

In this case, Plaintiff alleges that Defendant Buglewicz acted with deliberate indifference in "giving [Plaintiff] NSAIDs [such] as Naproxen" from which Plaintiff claims he suffered serious medical harm.  (Docket #11 at ¶ 18.)  Plaintiff asserts he was informed by Defendant Chamjock that "he wasn't supposed to have [Naproxen] due to [the] Hep C viral infection of [Plaintiff's] liver and kidneys" and that Dr. Buglewicz "should have known not to prescribe [Plaintiff] NSAIDs."  (*Id*. at ¶ 18, 29.)  According to Plaintiff, the Naproxen "turned to poison and had started attacking [Plaintiff's] body."  (*Id*. at ¶ 27.)

As evidence of his theory, Plaintiff provides an Operative Note dated October 18, 2010, when Plaintiff was hospitalized for two prepyloric ulcers .  (*Id*. at 28.)  As stated in the Note, "[i]t was felt very likely that this was related to an upper GI source due to the fact he has been on naproxen and aspirin together in recent times."  (*Id*.)  However, the Note goes on to observe that "[Plaintiff] has a known history of peptic ulcer disease in the past, particularly back in the 1980s."  (*Id*.)  The Note does not mention Plaintiff's HCV.  (*Id*.)

Upon review of the documents submitted by Plaintiff and in consideration of those submitted by Defendants, the Court finds that Plaintiff has failed to provide sufficient evidence of deliberate indifference and causation.  With respect to deliberate indifference, nothing in record indicates that Plaintiff was allergic to Naproxen or that Defendant Buglewicz prescribed Plaintiff with Naproxen with knowledge that it would harm him.  Despite Plaintiff's conclusory assertion that Dr. Buglewicz "should have known not to prescribe [Plaintiff] with NSAIDs," the sworn affidavit submitted by Dr. Paula Frantz states that "neither diabetes nor hepatitis C is a contra-indication to the use of naproxen or other non-steroidal anti-inflammatory agents (NSAIDs)."  (Dockets ##11 at ¶ 29, 49 at ¶ 31.)  Absent any evidence from Plaintiff to the contrary, the Court finds that Plaintiff has failed to provide sufficient evidence that Dr. Buglewicz acted with deliberate indifference in prescribing Plaintiff with

Naproxen.  Additionally, based on Plaintiff's documented history of ulcers, the Court does not find Plaintiff has provided sufficient "positive evidence of the causal element" to proceed past summary judgment.  *See Daniels*, 668 F.2d at 488-89.

C.    <u>Denial of Seizure Medications</u>

Plaintiff alleges that Defendants have abruptly stopped Plaintiff's seizure medications in violation of the Eighth Amendment.  Defendants counter that Plaintiff has not suffered from seizures since 2003 and does not require treatment for a seizure disorder.  Thus, Defendants contend Plaintiff has failed to demonstrate any injury that would satisfy the objective component of an Eighth Amendment claim.

Upon review of Plaintiff's Amended Complaint and all evidence submitted therewith, the Court finds no indication that Plaintiff has suffered any seizures since his medications were discontinued.  Additionally, Plaintiff's response to the pending motion reports that Plaintiff is currently taking Tegertal for both seizures and leg pain, and that he has had "no problem with seizures for awhile[.]" (Docket #61.)  In light of the evidence in the record, the Court concludes that no reasonable jury could find that Plaintiff has suffered sufficiently serious injury as a result of the alleged discontinuance of seizure medications to prevail on a claim under the Eighth Amendment.

D.    <u>Denial of Neuropathy Medications</u>

Plaintiff alleges that Defendants have "failed to follow the prescribed medical treatment plan" for Plaintiff's diabetic neuropathy by discontinuing Plaintiff's use of Neurontin.  In addition, based on the grievances attached to his Amended Complaint, the Court infers a claim for the denial of Neurontin prior to December 2010.

Defendants present a sworn statement from Dr. Frantz describing the progression of Plaintiff's diabetic neuropathy and the treatment he received.  (*See* docket #49-1.)  Plaintiff

complained of pain due to diabetic neuropathy on October 26, 2010, for which he received a prescription for amitriptyline.  (*Id*. at ¶ 36.)  On November 3, 2010, Plaintiff reported that he had stopped taking the amitriptyline because it made him drowsy. (*Id*. at ¶ 37.)  The provider discontinued the amitriptyline immediately and prescribed nortriptyline instead.  (*Id*.)  On January 6, 2011, Plaintiff indicated that the nortriptyline was not effective and requested he be placed on Neurontin.  (*Id*. at ¶ 41.) According to Dr. Frantz, Neurontin has "significant abuse potential" and is only administered by the CDOC  when providers have been unable to accomplish treatment with less abusable medications.  (*Id*. at ¶ 55.)  Consistent with this protocol, the treatment provider increased Plaintiff's dose of nortriptyline before ordering Neurontin.  However, in light of Plaintiff's continuing pain, the medical provider placed a non-formulary request for Neurontin on February 16, 2011.  (*Id*. at ¶ 42.)

Upon review of Plaintiff's medical records, Dr. Frantz asserts that the only interruption in Plaintiff's receipt of Neurontin occurred on April 11, 2011, when Dr. Fauvel questioned Plaintiff's need for Neurontin and discontinued the drug accordingly.  (*Id*. at ¶¶ 45, 47.)  However, Defendant Chamjock resumed Plaintiff's Neurontin prescription on April 20, 2011, immediately upon learning it had been discontinued.  (*Id*. at ¶ 46.)  Thus, it appears Plaintiff has been receiving Neurontin on a mostly consistent basis since approximately February 2011.

With respect to any claim Plaintiff asserts for the denial of Neurontin prior to 2010, the undisputed evidence presented by Defendants shows that all treating physicians followed CDOC protocol in attempting to treat Plaintiff with less abusable medications prior to administering Neurontin.  Plaintiff's disagreement with CDOC policy or the treating decisions made in accordance therewith does not support a claim for relief under the Eighth Amendment.  *See Jones v. Bockor*, 443 F. App'x 327, 330 (10th Cir. 2011) ("Disagreement with a medical professional's 'judgement

concerning the most appropriate treatment, without more, does not rise to the level of an Eighth Amendment violation.'") (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1102 (10th Cir. 2010)). Moreover, on the current record, the Court finds no evidence that beyond Plaintiff's allegations that Plaintiff's Neurontin prescription has been discontinued for more than a nine day period.  In its absence, the Court does not find that Plaintiff has established a sufficient degree of harm to proceed to trial.  On the whole, the Court finds that Plaintiff has failed to demonstrate a triable issue a fact regarding either his delayed or discontinued prescription of Neurontin.

E.   Improper Prescription of Actos

Plaintiff alleges that Defendants improperly prescribed him Actos, which Plaintiff claims "can be causing [his] irregular heartbeat and future harm." (Docket #11 at ¶ 60.)  Defendants recognize that congestive heart failure is a known side effect of Actos but argue that Plaintiff does not suffer from congestive heart failure.  Though Plaintiff has complained of an abnormal heart rhythm and edema in one leg, Dr. Frantz asserts these conditions are not symptoms of congestive heart failure. (Docket #49-1 at ¶ 52.)  Plaintiff has presented neither statements nor evidence to the contrary.  However, Plaintiff has apparently chosen to discontinue his use of Actos upon reading that Actos is "not good for the heart."  (Docket #61 at 2.)

Like Plaintiff's claim of an improper Naproxen prescription, the Court has reviewed the record and finds that Plaintiff has failed to provide sufficient evidence of causation or deliberate indifference.  First, there is no evidence, beyond Plaintiff's speculation, that Plaintiff has suffered from any heart condition as a result of the Actos prescription.  Plaintiff's own description of a causal is link tenuous at best. (*See* docket #11 at ¶ 60)  Though Defendants recognize that congestive heart failure is a potential side effect of Actos, Plaintiff has not provided any reasons why Actos was inappropriate for his particular condition, much less demonstrated that Defendants were aware of

and consciously disregarded such reasons.   As noted above, Plaintiff's subjective belief that Defendants should not have prescribed him Actos is, without more, insufficient to survive summary judgment under the Eighth Amendment.   *See Gee*, 627 F.3d at 1102.

      F.    <u>Mismanagement of Insulin Prescription</u>

Plaintiff asserts that Defendant Chamjock has subjected him to improper doses of insulin and that prison staff, including Defendants, refused to provide him with medical attention at times when his sugar levels were high.   (Docket #11 at ¶ 8.)   In support of their contention that Plaintiff received adequate treatment for his diabetes, Defendants attach an abundance of medical records to their pending motion for summary judgment.   Plaintiff's response provides no additional evidence of his claims but reports that "they have [his insulin levels] ok now."   (Docket #61 at 2.)

Upon review of the medical records, the Court observes that Plaintiff had at least eleven medical appointments between May 10, 2010 and June 20, 2011. (*See* dockets ##49-41, 49-45, 49-47, 49-50, 49-53, 49-54, 49-56, 49-59, 49-60, 49-62, 49-65, 49-67, and 49-70.)   While some records do not address Plaintiff's insulin levels specifically, Plaintiff reported on October 20, 2010, that his blood sugars had been running "mostly under 100[.]" (Docket #49-65 at 1.)   Plaintiff's Amended Complaint alleges that his insulin levels were higher in the four-to-five-month period prior to the filing date.   (Docket #11 at ¶ 31.)   This statement is consistent with medical records on June 7, 2011, indicating that Plaintiff's diabetes was "currently not well controlled."   (Docket #49-67 at 1.)

In her sworn affidavit, Dr. Frantz asserts that Plaintiff was unable to control his diabetes because he refused to take any short-acting insulin as prescribed by Defendant Chamjock.   (Docket #49-1 at ¶ 53.)   Plaintiff's unwillingness to adhere to Dr. Chamjock's orders is documented in a June 6, 2011 medical record, which states that Plaintiff "[a]dmits" to taking only some of his prescribed medications.   (Docket 49-67 at 1.)   The June 6, 2011 medical record also reveals several

closed "kites" Plaintiff filed to express concern regarding his diabetes.  (*Id.* at 1-2.)

Despite Plaintiff's contention that he has been refused medical treatment for his diabetes, the Court finds that medical providers, including Defendants, have been adequately responsive to Plaintiff's medical needs. Any allegation of deliberate indifference in this respect is belied by the extensive medical records documenting frequent appointments and regular monitoring of Plaintiff's diabetic condition.  If deliberate indifference exists anywhere in the treatment of Plaintiff's diabetes, it is most appropriately attributed to Plaintiff in light of his refusal take prescribed medications intended to regulate his diabetes.

In consideration of the evidence presented by Defendants and the lack of evidence provided by Plaintiff, the Court concludes that no reasonable jury could find that Defendants exhibited deliberate indifference in treating Plaintiff's diabetes.  To the contrary, the Court finds that Plaintiff contributed to his own unstable condition by ignoring the Defendant Chamjock's orders and deviating from the prescribed treatment protocol.  Defendants cannot be liable under the Eighth Amendment claim.

Having reviewed each alleged violation of the Eighth Amendment, the Court finds that Plaintiff has failed to demonstrate any genuine issue of material fact that would necessitate a trial in this case.  At a minimum, Plaintiff has not demonstrated a clearly established constitutional mandate to provide any more medical treatment than was given.  Therefore, the Court recommends the District Court find that Defendants are entitled to qualified immunity with respect to Plaintiff's Eighth Amendment claim, and that it enter judgment in Defendants' favor accordingly.

## CONCLUSION

Summary judgment in favor of Defendants is, in the Court's view, warranted on several grounds.  First, to the extent Plaintiff seeks to recover against Defendants for conduct occurring

prior to 2009, the Court finds that such a claim is barred by the statute of limitations.  Second, in light of Plaintiff's failure to exhaust his administrative remedies with respect to the majority of his medical  concerns, the Court finds that the PLRA bars all claims except for those pertaining to Plaintiff's Naproxen and Neurontin prescriptions.  Finally, the Court finds that Plaintiff has failed to demonstrate, on supported facts, a viable Eighth Amendment claim against Defendants for any of the medical ailments described in his Amended Complaint. For these reasons, the Court **RECOMMENDS** Defendants' Motion for Summary Judgment [filed April 30, 2012; docket #49] be **GRANTED**.

Dated and entered at Denver, Colorado, this 3rd day of October, 2012.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge